IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DUANE DERFUS and STEVEN PETKIEWICZ, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 13-cv-7298 |
| ) | |
| CITY OF CHICAGO, ET AL., ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Duane Derfus and Steven Petkiewicz claim that Defendant City of Chicago has a policy that prohibits homeless people from registering pursuant to the Illinois Sexual Offender Registration Act ("SORA") as homeless and instead requires them to locate a homeless shelter and obtain a state identification card with the shelter's address in order to be registered. Defendants have moved to dismiss Plaintiffs' injunctive claim pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Plaintiffs' procedural due process and equal protection claims pursuant to Rule 12(b)(6) for failure to state a claim. Defendants also urge the Court to dismiss the claims against the individual officer Defendants because they are entitled to qualified immunity. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion to dismiss [18].

**I.    Background**

Individuals who have been convicted of sexual crimes are required to register pursuant to the Illinois Sexual Offender Registration Act ("SORA"). Under SORA, Plaintiffs must, among other things, register in person with the appropriate law enforcement agency where they live; pay an initial registration fee of $100; and provide a photograph and current address. 730 ILCS 150/3(a). SORA requires that any person who lacks a fixed residence must report weekly in

person to the appropriate law enforcement agency. Compl. ¶ 5; 730 ILCS 150/3. Plaintiffs claim that the City has a policy that prohibits homeless people from registering as homeless and instead requires them to locate a homeless shelter and obtain a state identification card with the shelter's address in order to be registered.

Duane Derfus was convicted of a sex crime in March 2010 and released from the Illinois Department of Corrections on September 27, 2013. He was required by SORA to register with his local law enforcement agency within three days. Derfus attempted unsuccessfully to register at Chicago Police Department ("CPD") headquarters as a homeless person several times in September and October 2013. To register, Derfus was ordered to locate a shelter and provide proof of residency at such address in the form of a state identification card. On October 7, Derfus reported that he was staying overnight at a shelter located at 200 S. Sacramento; however Defendant Chicago Police Officer Jerry Anderson refused to register him without a state identification card reflecting that the shelter was his residence. After complying with the instructions, Derfus returned to the police department on October 10, but was refused registration because of a new municipal policy that no child sex offender, like Derfus, may stay overnight at the 200 S. Sacramento shelter. Because the City would not permit Derfus to register, he was in violation of SORA and labeled "non-complaint" on the Illinois State Police website, which exposed him to liability and incarceration. In his response brief, Derfus also alleges that he received a notice from the Illinois State Police that his registration requirement had been extended 10 years because he did not comply with SORA following his release from jail.[1] Following the October 18, 2013, temporary restraining order hearing in this Court, the City agreed to permit Derfus to register as a homeless person every seven days.

---

[1] In opposing a Rule 12(b)(6) motion to dismiss, a plaintiff "may elaborate on his factual allegations so long as the new elaborations are consistent with the pleading * * * [A] party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove * * * [and] is free to assert new facts in brief opposing motion to dismiss." *Geinsoky v. City of Chicago*, 675 F.3d 743, 746 n. 1 (7th Cir. 2012) (citations omitted).

Steven Petkiewicz was convicted of a sex crime in 1993 that requires him to register and report every 90 days under SORA, assuming he has a fixed residence. Since his release for the underlying conviction, Petkiewicz has been convicted of three separate SORA registering and/or reporting violations, which resulted in substantial prison sentences. Petkiewicz was released from the Illinois Department of Corrections on his most recent failure to register charge on December 18, 2012. According to Petkiewicz, he attempted to register as homeless on December 20, 2012, but was refused registration because of the City's policy of not registering persons who lack a fixed place of abode. Because he was unable to comply with the City's policy within three days of his release from the Illinois Department of Corrections, he was unregistered and in violation of SORA. Petkiewicz subsequently obtained a state identification card listing the Sacramento shelter address and was registered on December 24, 2012, as permanently residing at the shelter. He was re-registered at the shelter address in March 2013 and June 2013, each time for 90 days. Petkiewicz attempted to register with CPD on September 17, 2013, using the shelter address, but Defendant Chicago Police Officer Patrick Loftus told Petkiewicz that this address was invalid and gave him 30 days to vacate the shelter. On September 30, Petkiewicz claims he went to CPD headquarters and requested to register weekly as a homeless person, but Defendant Chicago Police Officer Ronald Jenkins told him that homeless registration was not permitted. Following the October 18, 2013, hearing in this Court, the City permitted Derfus to register as a homeless person.

Plaintiffs filed suit under 42 U.S.C. § 1983 against the City and Officers Anderson, Loftus, and Jenkins, claiming that Defendants' failure to register Plaintiffs pursuant to SORA denies them procedural due process and equal protection in violation of the Fourteenth Amendment. Plaintiffs also bring a state law claim. Plaintiffs seek prospective relief "to permit [P]laintiffs to register pursuant to SORA," compensatory damages, and declaratory relief.

## II. Legal Standard

The purpose of a Rule 12(b) motion to dismiss is not to decide the merits of the case. A Rule 12(b)(6) motion tests the sufficiency of the complaint, *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir.1990), while a Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). In reviewing a motion to dismiss under either rule, the Court takes as true all factual allegations in Plaintiffs' complaint and draws all reasonable inferences in their favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Long*, 182 F.3d at 554. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original).

Turning to Defendants' challenge to Plaintiffs' standing, there are two types of 12(b)(1) challenges—factual and facial—and they have a "critical difference." *Apex Digital Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). When a defendant argues that "the plaintiffs'

complaints, even if true, were purportedly insufficient to establish injury-in-fact," the challenge is a facial one. *Id.* at 443-44. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Id.* at 443 (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Factual challenges, however, lie "where 'the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction.'" *Id.* (citing *United Phosphorus, Ltd. v. Angus Chem. Co.*, 332 F.3d 942, 946 (7th Cir. 2003)). Courts may look beyond the complaint only when a defendant brings a factual attack against jurisdiction, such as here, where Defendants claim that Plaintiffs lacks standing. *Id.*

**III. Analysis**

Defendants contend that because Plaintiffs are currently registered, they lack standing to sue for prospective relief. They also contend that Plaintiffs have failed to state either a procedural due process or equal protection violation and thus those claims should be dismissed pursuant to Rule 12(b)(6). Finally, Defendants contend that individual officer Defendants Anderson, Loftus, and Jenkins are entitled to qualified immunity.

    **A.    Standing to Seek Injunctive Relief**[2]

"Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; when that injury is caused by the defendant's acts; and when a judicial decision in the plaintiff's favor would redress that injury." *Brandt v. Village of Winnetka, Ill.*, 612 F.3d 647, 649 (7th Cir. 2010); *Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 899 (7th Cir. 2012) (stating that to have Article III standing, a plaintiff must demonstrate "(1) an injury-in-fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court"). Plaintiffs are required to demonstrate standing for each

---

[2] Defendants only challenge Plaintiffs' standing to seek injunctive relief, presumably perceiving that Plaintiffs have standing to seek damages for past harms that they allegedly suffered, to the extent that Plaintiffs can state a claim.

5

form of relief sought. *Friends of the Earth v. Laidlaw Environmental Servs.*, 528 U.S. 167, 180-81 (2000). Therefore, even if Plaintiffs have standing for their damages claim based on alleged past illegal conduct by the City, that is insufficient to confer standing for prospective injunctive relief.

"Standing for injunctive relief requires that a plaintiff demonstrate that he "'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (no standing for injunctive relief where plaintiff failed to show it was likely he would be arrested and subjected to choke hold again) (citations omitted). Moreover, a plaintiff's reliance on past alleged constitutional violations is not enough to establish standing because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (finding no standing for injunctive relief where allegations were speculative based on past discriminatory enforcement of criminal law); *Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010) ("As a general rule, the fact that a person was previously prosecuted for violating a law is insufficient by itself to establish that person's standing to request injunctive relief."); *Sierakowski v. Ryan*, 223 F.3d 440, 444-45 (7th Cir. 2000) (where statute allowed physician discretion to test patient for HIV without their knowledge or consent, prospects of future testing were too speculative for injunctive relief); *Knox v. McGinnis*, 998 F.2d 1405, 1413 (7th Cir. 1993) (finding prisoner who complained about restraints used while in segregation unit lacked standing for injunctive relief because he was no longer in segregation unit, even though possibility existed that he would return to unit someday).

In attempting to rebut Defendants' argument that Plaintiffs lack standing to seek injunctive relief, Plaintiffs claim that there is "uncertainty" as to their registration status. But Plaintiffs admit that as a result of the agreement reached at the hearing on Plaintiffs' motion for temporary restraining order on October 18, 2013, they were permitted to register as homeless and remain in compliance with SORA. Plaintiff Derfus is now registered at a hotel and therefore not registered as homeless or seeking to register as homeless. While he may need to comply with the weekly registration required under SORA for homeless persons at some point in the future, there is no reason to believe that he will not be permitted to do so.[3] Plaintiff Petkiewicz has been permitted to register weekly as homeless for the past several months, and again, has not put forth any reasons why this would not be the case in the future. The type of speculative future harm invoked by Plaintiffs does not support standing to seek injunctive relief.

Plaintiffs also claim that the City is allowing some, but not all, homeless sex offenders to stay at the shelter located at 200 S. Sacramento. Pls.' Resp. at 13-14. But the prospective relief that Plaintiffs seek in this case is to register under SORA, not to live at 200 S. Sacramento. See R. 4, Compl. at 8. Plaintiffs cannot seek prospective relief not requested in the Complaint. See *DeBeers Consolidated Mines, Limited. v. United States*, 325 U.S. 212, 220 (1945) (noting that it is not appropriate to grant an injunction that "deals with a matter lying wholly outside the issues in the suit").

In light of their current, in-compliance registration status, Plaintiffs have attached to their response the declarations of two non-party sex offenders who allegedly have been denied registration in the past few months. But these declarations do not support Plaintiffs' argument that *Plaintiffs* will not be registered as homeless persons under SORA. Plaintiffs are in compliance with SORA and therefore their request for prospective relief lacks the real and

---

[3] Moreover, SORA's registration requirements are not challenged in this suit; only the City's registration policies.

immediate threat necessary to demonstrate standing. Since they have been permitted to register and are now in compliance with SORA's requirements, Plaintiffs no longer allege a "real and immediate" threat that the City will not register them as homeless. Because so many contingent events must take place before Plaintiffs can again obtain standing to seek prospective injunctive relief, the threat of injury to Plaintiffs simply is too "conjectural" and "hypothetical" to confer standing here. See also *Johnson v. City of Chicago*, 2013 WL 3811545, at *6 (N.D. Ill. July 22, 2013). Therefore, Plaintiffs lack standing to pursue the injunctive relief they seek, and their request for prospective relief must be stricken from the complaint. See *Beley v. City of Chicago*, 2013 WL 3270668, at *3-4 (N.D. Ill. June 27, 2013) (dismissing plaintiffs' claims for prospective relief because plaintiffs had "not sufficiently alleged that they are under threat of future harm by the City's alleged policy of not registering homeless sex offenders").

### B. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits a state from denying to persons within its jurisdiction the equal protection of its laws. Equal protection violations may arise in a variety of situations. In evaluating whether a plaintiff has stated an equal protection claim, a court first determines whether the challenged actions target a suspect class or address a fundamental right. *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 637 (7th Cir. 2007). If so, a higher degree of scrutiny (strict or intermediate) will be applied to evaluate the government's actions. *Id.*; see also *Srail v. Vill. of Lisle,* 588 F.3d 940, 943 (7th Cir. 2009) (noting that when the government draws a distinction based on an individual's membership in a suspect class or infringes on a fundamental right, its justification for the distinction must satisfy the "strict scrutiny" test to avoid offending the constitution). If not, the court will apply a rational basis test to determine whether the challenged actions were "rationally related to a legitimate state interest." *Id.* at 637–38.

In this case, Plaintiffs do not allege membership in a suspect class, nor do they contend that Defendants' actions implicated a fundamental right. Rather, Plaintiffs' equal protection claim is set forth as follows: "Defendants have no rational basis for distinguishing between homeless and non-homeless sex offenders beyond the distinctions drawn by state law." Essentially, Plaintiffs contend that Defendants imposed an additional hardship on those sex offenders who lack a fixed residence by denying them the ability to register. Under the "rational basis" test, Plaintiffs must allege that (1) Defendants treated them differently from other similarly situated individuals; (2) because of their status as homeless sex offenders; and (3) this differential treatment was not rationally related to a legitimate government interest. See *Wroblewski v. City of Washburn,* 965 F.2d 452, 460 (7th Cir. 1992) ("a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications").

Plaintiffs' equal protection claim founders on the first part of this test. The "similarly situated" analysis does not rely on a "precise formula," but "what is clear is that similarly situated individuals must be very similar indeed." *LaBella Winnetka, Inc. v. Vill. of Winnetka,* 628 F.3d 937, 942 (7th Cir. 2010) (internal quotation marks omitted). A plaintiff and his comparators must be directly comparable in all material respects. *Racine Charter One, Inc. v. Racine Unified Sch. Dist.,* 424 F.3d 677, 680 (7th Cir. 2005). Although the question of whether a comparator is similarly situated is usually reserved for the finder of fact, when the plaintiff fails to allege facts tending to show the two groups are similarly situated, then dismissal under Rule 12(b)(6) is appropriate. *LaBella Winnetka,* 628 F.3d at 942.

Plaintiffs identify non-homeless sex offenders as the group of persons whom they contend are similarly situated to homeless sex offenders like themselves.[4] However, there are

---

[4] In their response to the motion to dismiss, Plaintiffs put it slightly differently, arguing that Defendants distinguish between those homeless sex offenders who have been able to locate overnight shelter and those who have not. This is only a semantic difference from the homeless/non-homeless distinction referenced in his complaint, and it does not change the Court's analysis.

obvious and significant differences between these two groups. Homeless persons are, by definition, transient and lack a place of permanent accommodation; non-homeless persons have a fixed place of abode. This difference is material when considering a statutory scheme like SORA, which exists "to track the whereabouts of convicted sex offenders." *People v. Wlecke,* 2014 WL 585963 (Ill. App. Ct. 1st Dist. 2014). Even if those with and those without fixed residences were "similarly situated" with respect to a state law requiring close monitoring of their addresses, the rational basis for treating the latter group differently is obvious. Sex offenders who regularly shift their living quarters simply present different logistical challenges with respect to keeping track of their whereabouts, which is the point of SORA. In short, Plaintiffs have failed to allege that the City had no rational basis for treating homeless sex offenders differently than non-homeless sex offenders so as to overcome the presumption of rationality. Thus, the Court concludes that Plaintiffs have failed to state a viable equal protection claim. See also *Saiger v. City of Chicago*, --- F. Supp. 2d ---, 2014 WL 16126, at *2-3 (N.D. Ill. Apr. 19, 2014); *Beley v. City of Chicago*, 2013 WL 3270668, at *5 (N.D. Ill. June 27, 2013).

### C. Due Process Claim

In setting forth their due process claim, Plaintiffs allege that "[s]tate law creates a property right for persons without a fixed place of abode to avoid violation of SORA by registering every 7 days." According to Plaintiffs, "Defendants have no discretion, other than as provided under state law or state administrative code, to deny persons a right to register." Plaintiffs allege that "Defendants knowingly disregard this state regulatory scheme causing plaintiffs and similarly situated persons to be deprived of procedural due process." Compl. at ¶ 28. In moving to dismiss Plaintiffs' due process claim, Defendants contend that the claim is one for violation of state law disguised as a federal constitutional claim.

The Fourteenth Amendment imposes constraints on government actions which deprive an individual of "liberty" or "property" interests within the meaning of the Due Process Clause. See *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). To assert a violation of the Fourteenth Amendment's Due Process Clause, a plaintiff must show that he had a "property interest" and that he was deprived of this interest without due process of law.[5] See *Phelan v. City of Chicago,* 347 F.3d 679, 681 (7th Cir. 2003) (citing *Bishop v. Wood,* 426 U.S. 341, 343 (1976)). "Before a party may assert a due process argument—procedural or substantive—it must establish that it has a 'legitimate claim of entitlement' to the right being asserted." *New Burnham Prairie Homes, Inc. v. Vill. of Burnham,* 910 F.2d 1474, 1479 (7th Cir. 1990) (quoting *The Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972)). Property interests are not created by the United States Constitution; "[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Moore v. Muncie Police and Fire Merit Com'n*, 312 F.3d 322, 326 (7th Cir. 2002) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

A person required to register as a sex offender must abide by the requirements of SORA; failure to comply with any provision may cause a person to be arrested and charged with a strict liability felony offense. In *Johnson v. City of Chicago*, the district court explained the consequences of being denied registration:

> Once a sex offender's annual registration date passes and he has not registered, he is automatically in violation of the law and will be jailed if charged and convicted. 730 ILCS 150/10(a). Defendants make light of this point, claiming that

---

[5] In determining what process is due in a particular situation, a court considers: (1) the private interest affected by the government action; (2) the risk of erroneous deprivation of the interest through the procedures used, and the probable value of any alternative procedural safeguards; and (3) the government's interest, including the function involved and additional administrative or fiscal burdens that alternate procedural requirements would require. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Schepers v. Comm'r, Ind. Dept. of Corr.*, 691 F.3d 909, 915 (7th Cir. 2012).

11

> individuals who violate SORA "*may*" 'be required to serve a minimum period of 7 days confinement in the local county jail.'" (Dkt. 74 at p. 9.) (emphasis added.) But the statute clearly states that '[a]ny person convicted of a violation of any provision of this Article shall" be jailed for a week. 730 ILCS 150/10(a).
>
> "[T]he interest in being free from physical detention by one's own government" has been called "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992), and *Parham v. J.R.*, 442 U.S. 584, 600 (1979)). The denial of registration exposes sex offenders to liability and incarceration. This is precisely the type of situation that requires due process.

*Johnson*, 2013 WL 3811545 at *9; see also *Saiger v. McCarthy*, 13 C 5590, Docket Entry 5 at 2 (N.D. Ill. Nov. 4, 2013) (recognizing that SORA registration implicates some federally protected interest and noting that the plaintiff "essentially alleges that he has been subject to a no-win situation where he is not permitted to register and is then arrested for failing to register").

The law requires a sex offender to register in a given municipality once he has resided in the municipality for three days. See 730 ILCS 150/3(a). If the offender fails to do so, he has committed a crime and is therefore subject to arrest. Thus, the City's alleged refusal to register homeless persons jeopardizes their interest in freedom from arrest and confinement, which is a significant interest. See *Hernandez v. Sheahan*, 455 F.3d 772, 777 (7th Cir. 2006) ("The interest in liberty is a weighty one * * *."); *cf. Wilkinson v. Austin*, 545 U.S. 209, 225 (2005) (examining the first factor under *Mathews* and indicating that members of the public have a greater interest than prison inmates in freedom from confinement). The Court must afford significant weight to the interest in being free from improper arrest. Plaintiffs allege the existence of a policy by the City to deny homeless sex offenders the opportunity to register and that this denial carries with it the possibility of jail time for failure to register.[6] Given these allegation, which the Court accepts

---

[6] On February 5, 2014, the Illinois Appellate Court published an opinion in *People v. Wlecke*, 6 N.E.3d 745 (Ill. App. Ct. 1st Dist. 2014), reversing the defendant's conviction for violating the weekly registration requirement for a homeless person pursuant to SORA. In its opinion, the appellate court directly pointed a finger at the City's registration practices:

as true for purposes of the present motion, Plaintiffs have stated a due process claim against the City.[7]

### D. State Law Claim

Having concluded that Plaintiffs have stated a federal due process claim, Defendants' sole justification for dismissing the state law count—that the Court should not exercise supplemental jurisdiction over Plaintiffs' state law claim if the federal claims are dismissed—fails. See, *e.g.*, 28 U.S.C. § 1367; *Williams Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007).

### E. Qualified Immunity

Individual officer Defendants Anderson, Loftus, and Jenkins also seek dismissal of Plaintiffs' § 1983 claim for damages against them based on the defense of qualified immunity. Qualified immunity shields a government official from liability for damages under 42 U.S.C. § 1983 if his actions reasonably could have been thought to be consistent with the rights that he is alleged to have violated. *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 (7th Cir. 2005). As the Supreme Court recently reiterated, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those

---

> The record reveals that it is common practice for the Chicago police department's criminal registration unit to turn away sex offenders attempting to register for lack of proof of address. Between June 14, 2010 and June 18, 2010, the registration logs show 117 persons reported to register but 19 were turned away for failure to provide proof of address. Thus, for those 19 offenders, law enforcement lost the ability to track their whereabouts unless and until they either reappeared with a "satisfactory" proof or were arrested.

Id. at ¶ 38 n.2. Whether the City actually has an official policy that frustrates the purpose of SORA remains to be seen, but Plaintiffs have sufficiently alleged the existence of one.

[7] During the hearing on Plaintiffs' motion for a temporary restraining order, defense counsel indicated that the City was looking into its practices with regard to registering homeless sex offenders. Perhaps by the next status hearing, the City will have an update for Plaintiffs and the Court as to procedures that the City is considering or developing to address the issues raised in this case.

who knowingly violate the law." *Messerschmidt v. Millender,* —— U.S. ——, ——, 132 S.Ct. 1235, 1244, 182 L.Ed.2d 47 (2012) (quotations omitted).

Qualified immunity requires a court to assess "the objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It involves two inquires: (1) taking the facts in the light most favorable to the plaintiff, did defendant's conduct violated a constitutional right; and (2) was the right was clearly established at the time of the official's conduct See *Saucier v. Katz*, 533 U.S. 194, 200 (2001). On the latter question, "[t]he relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Id.* at 202. A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Leaf*, 400 F.3d at 1080 (internal quotation marks omitted).

The Court begins with the second of these questions, because doing so conserves judicial resources. See *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013). Plaintiffs may show that the right was clearly established by identifying a "closely analogous case" that recognizes the right in question or by showing that individual officer Defendants' conduct was so egregious that as an objective matter, the officers would have been on notice that they were violating the constitution. See, *e.g., Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001) ("qualified immunity is dissolved * * * when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.").

Plaintiffs attempt to overcome qualified immunity by offering what they contend is an analogous case. Specifically, they point to the Illinois Supreme Court's decision *People v. Molnar*, 857 N.E.2d 209 (2006). Putting aside whether a state supreme court case would suffice to clearly establish the law, *Molnar* does not help Plaintiffs. The decision did not address the

constitutionality of declining registration but rather concerned whether SORA was unconstitutionally vague in certain respects. Because Plaintiffs have not identified any basis for the proposition that the constitutional right at issue was clearly established at the relevant time, the Court concludes that the individual officer Defendants are entitled to qualified immunity from liability for damages under § 1983.

## IV.     Conclusion

For the reasons set forth above, the Court grants in part and denies in part Defendants' motion to dismiss [18]. The Court dismisses Plaintiffs' equal protection claim as well as all of Plaintiffs' § 1983 claims against individual officer Defendants Anderson, Loftus, and Jenkins based on qualified immunity. The Court denies Defendants' motion to dismiss with respect to Plaintiffs' federal due process and state law claims against the City.

Dated: May 20, 2014  
_____  
Robert M. Dow, Jr.  
United States District Judge