# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DUANE DERFUS and STEVEN PETKIEWICZ, | ) ) ) | |
| Plaintiffs, | ) ) | No. 13 C 7298 |
| v. | ) ) | Judge Jorge L. Alonso |
| CITY OF CHICAGO,[1] | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs sue the City of Chicago pursuant to 42 U.S.C. § 1983 for its alleged violations of their due process rights and the Illinois Sex Offender Registration Act. The City has filed a Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment. For the reasons set forth below, the Court grants the motion.

## Background

The Illinois Sex Offender Registration Act ("SORA") requires certain sex offenders who reside or are temporarily domiciled for 3 or more days in Chicago to register in person at the Chicago Police Department ("CPD") Headquarters and provide various information including "positive identification and documentation that substantiates proof of residence at the registering address." 730 Ill. Comp. Stat. 150/3(a)(1), (c)(5). The statute also requires the offender "to pay a $100 initial registration fee," though the registering agency can waive the fee "if it determines that

---

[1]On May 20, 2014, Judge Dow dismissed all of plaintiffs' claims against Jerry Anderson, Patrick Loftus, and Ronald Jenkins and plaintiffs' equal protection claims against the City. (*See* 5/20/14 Mem. Op. & Order at 15.)

the [offender] is indigent and unable to pay." 730 Ill. Comp. Stat. 150/3(c)(6). Each offender must register within 3 days of, among other things, establishing a residence or temporary domicile. 730 Ill. Comp. Stat. 150/3(b). A "place of residence or temporary domicile" is any place "where the sex offender resides for an aggregate period of time of 3 or more days during any calendar year." 730 Ill. Comp. Stat. 150/3(a). A "fixed residence" is any place "that a sex offender resides for an aggregate period of time of 5 or more days in a calendar year." 730 Ill. Comp. Stat. 150/2(I). An offender who is required to register but "lacks a fixed residence or temporary domicile . . . must notify, in person, the agency of jurisdiction of his or her last known address within 3 days after ceasing to have a fixed residence" and "must report weekly, in person, . . . [to] the chief of police in the municipality in which he or she is located." 730 Ill. Comp. Stat. 150/3(a)(2), 150/6.

**Plaintiff Derfus**

Derfus is a sex offender subject to SORA who was released from prison on September 27, 2013. (Pls.' LR 56.1(b)(3)(B) Stmt. ¶¶ 1, 13.) On September 29, 2013, he went to the police station at Harrison and Kedzie to register and was told that he had to register at CPD Headquarters at 35th Street and Michigan Avenue. (*Id.* ¶ 13.) That night, Derfus stayed at the Franciscan Annex homeless shelter at 200 S. Sacramento in Chicago. (*Id.*)

On September 30, 2013, Derfus went to CPD headquarters to register, but after telling the registering officer that he was going to Wisconsin for a few days, was told that he did not have to register until he returned. (*Id.* ¶ 14.) The officer also told Derfus that he could not register without identification. (*Id.*) CPD's registration log for that day shows that Derfus had been "turned away" because he was "moving to Wis." (*Id.*) At some point over the next few days, Derfus went to

2

Wisconsin. (*Id.* ¶ 15.) From September 29, 2013 until he left for Wisconsin, Derfus stayed at 200 S. Sacramento. (*Id.*) When Derfus returned from Wisconsin, he went back to 200 S. Sacramento, and planned to stay there regularly. (*Id.* ¶ 16.)

On October 7, 2013, Derfus went to CPD headquarters and told the registering officer that he was staying at 200 S. Sacramento. (*Id.* ¶ 17.) The registering officer told Derfus he could not be registered without state identification that showed 200 S. Sacramento as his address. (*Id.*) The registration log for that date shows "needs proper ID" as the "reason for [Derfus] being turned away." (*Id.*)

On October 10, 2013, Derfus returned to CPD Headquarters with a state identification card that showed 200 S. Sacramento as his address. (*Id.* ¶ 18.) The registering officer told Derfus he could not register at that address because it was within a prohibited zone for child sex offenders. (*Id.*) He also gave Derfus a fee waiver application. (*Id.*) The registration log for that date shows states that Derfus was "turned away" because he was given a fee waiver application. (*Id.*)

At a hearing before the Court on October 18, 2013, the City agreed to let Derfus register as a person without a fixed residence or temporary domicile, and Derfus did so the same day. (*Id.* ¶ 19.) From October 18, 2013 to December 3, 2013, when he registered at 2525 N. Milwaukee, Derfus registered weekly as a person lacking a fixed residence. (*Id.* ¶ 20.)

**Plaintiff Petkiewicz**

Petkiewicz was released from prison on December 18, 2012 with an IDOC temporary identification card that listed 200 S. Sacramento as his address. (*Id.* ¶ 21.) On December 20, he

went to register at CPD Headquarters and presented his temporary identification card. (*Id.* ¶ 22.) The registering officer told Petkiewicz that he need a state identification card to register. (*Id.*)

Virtually every night from December 21, 2012 through October 19, 2013, Petkiewicz stayed at 200 S. Sacramento. (*Id.* ¶ 23.) On December 21, 2012, Petkiewicz obtained a state identification card with 200 S. Sacramento listed as his address. (*Id.* ¶ 24.)

On December 24, 2102, Petkiewicz went to CPD Headquarters and was registered as residing at 200 S. Sacramento. (*Id.*) He was also registered at that address in March and June 2013. (*Id.* ¶ 25.)

However, when Petkiewicz went to register on September 17, 2013, the registering officer told him that he could not stay at 200 S. Sacramento because of its proximity to a school. (*Id.* ¶ 26.) The officer told Petkiewicz that he had thirty days to vacate that address and gave him a School/ Playground/Daycare Zone Violation Notice. (*Id.*)

On September 30, 2013, Petkiewicz tried to register at CPD Headquarters as "homeless" but was told by the registering officer that "homeless registration was not permitted." (Pls.' LR 56.1(b)(3)(C) ¶ 5.)

On October 18, 2013, at a hearing before the Court, the City agreed that Petkiewicz could be registered as a person lacking a fixed address or temporary domicile. (Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 28.) Petkiewicz registered as such that day and continues to do so every time he is required to register. (*Id.*)

4

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

To defeat the City's motion as to their § 1983 due process claims, plaintiffs must offer evidence that suggests they have "a protected life, liberty, or property interest," the City deprived them of it without the constitutionally-required process, and the deprivation resulted from the execution of a City policy or practice. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *Gustafson v. Jones*, 117 F.3d 1015, 1020 (7th Cir. 1997). Assuming that SORA gives plaintiffs a right to register without a fixed residence or a temporary domicile, an issue the Court does not decide, plaintiffs could prevail on this motion only if there were evidence that suggests the City denied them that right. There is not.

With respect to Derfus, the record establishes that: (1) on September 30, 2013, he tried to register and was told he did not have to do so because he was going to Wisconsin; (2) on October 7, 2013, he tried to register with the Sacramento address and was told he could not do so because he did not have state identification showing that address; and (3) on October 10, 2013, he tried to register with identification that showed the Sacramento address but was told he could not do so because that location was within a prohibited zone for child sex offenders. (Pls.' LR 56.1(b)(3)(B)

5

Stmt. ¶¶ 14, 17-18.) The day he was told that 200 S. Sacramento was off limits, Derfus says, he tried, without success, to register as an offender without a fixed residence or temporary domicile. (*See* Def.'s LR 56.1(a) Stmt., Ex. 1, Derfus Dep. at 86, 125.) However, it is undisputed that Derfus was not eligible for that status on that day because he had a fixed address, 200 S. Sacramento. (*Id.* at 83-84.) Moreover, though he slept on the streets between October 10, and 18, 2013 (*id.* at 84), the day the City registered him as not having a fixed residence, there is no evidence that Derfus tried to register at any time during that seven-day period. Absent such evidence, there is no triable issue of fact as to whether the City denied him any purported right to register as an offender without a fixed residence or temporary domicile.

The same is true for Petkiewicz. It is undisputed that on December 20, 2012, Petkiewicz was told he could not register at 200 S. Sacramento because he did not have a state identification card showing that location as his address. (Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 22.) It is also undisputed that, after obtaining the required identification, the City registered Petkiewicz at the Sacramento address on December 24, 2012, and in March and June 2013. (*Id.* ¶¶ 24-25.) When Petkiewicz went to register on September 17, 2013, however, he was told that he could not stay at the Sacramento address because of its proximity to a school and had thirty days to vacate it. (*Id.* ¶ 26.) On September 30, 2013, Petkiewicz tried, unsuccessfully, to register as an offender without a fixed residence or temporary domicile. (*Id.* ¶ 27; Pls.' LR 56.1(b)(3)(C) ¶ 5.) But it is undisputed that on September 30, 2013, and virtually every night thereafter until October 18, 2013, when the City registered him with that status, Petkiewicz stayed at the Sacramento address. (Pls.' LR 56.1(b)(3(B) Stmt. ¶ 23.) At the time, therefore, he was not an offender without a fixed residence or temporary domicile as defined by SORA. Given that fact, there is no triable fact issue as to whether the City

denied Petkiewicz any purported right to register as an offender without a fixed residence or temporary domicile.[2]

Even if plaintiffs had created a triable fact issue as to whether the City had refused to register them as offenders without a fixed residence or temporary domicile, their claim against the City would still fail because there is no evidence that it had a policy of refusing to register sex offenders with that status. *See Monell*, 436 U.S. at 694 (holding that a local government can only be held liable under 42 U.S.C. § 1983 when the constitutional injury was inflicted by the "execution of [the] government's policy"); *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) (stating that a "policy" for *Monell* purposes includes a widespread practice). In support of their policy allegation, plaintiffs submit evidence that: (1) only two offenders were registered as not having a fixed residence or temporary domicile in each of the periods between December 17, and 21, 2012 and April 22, and 26, 2013, while twenty-four and twenty-eight offenders, respectively, were registered with that status in the periods between February 18, and 21, 2014 and March 10, and 14, 2014; and (2) CPD refused to allow six non-parties to register as "homeless" between 2010 and 2013. (Pls.' LR 56.1(b)(3)(C) Stmt. ¶¶ 9-14, 17-20.) The fact that the City registered more offenders as not having a fixed residence or temporary domicile in two random time periods in 2014 than in two random time periods in prior years does not suggest that the City had a policy of refusing to register offenders with that status. Nor does the fact that it refused over a three-year period to register six offenders as "homeless," a term that does not appear in SORA and that is commonly used to refer to a much broader segment of people than those deemed by SORA to be lacking a fixed residence

---

[2]The Court's conclusion also disposes of plaintiffs' claim that the City's refusal to register them violated SORA.

or temporary domicile. *See People v. Peterson*, 935 N.E.2d 1123, 1130 (Ill. App. Ct. 2010) (noting that "[a] person could have a 'fixed residence' by [SORA]'s definition and yet be homeless by the ordinary way of speaking."). Given the dearth of policy evidence, plaintiffs could not defeat the City's motion, even if they record suggested that the City had refused to let them register.

## Conclusion

For the reasons set forth above, the Court finds that there is no genuine issue of material fact as to plaintiffs' claims against the City, which is entitled to judgment as a matter of law. Therefore, the Court grants the City's motion for summary judgment [41]. This case is terminated.

**SO ORDERED.**                                **ENTERED: April 6, 2015**

_____
**HON. JORGE ALONSO**
**United States District Judge**